LUCY M. GLOVER, ADMINISTRATRIX, *vs.* THE TOWN OF
LITCHFIELD.

First Judicial District, Hartford, January Term, 1913.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

While § 1 of chapter 264 of the Public Acts of 1907 (the Good Roads
Act) modifies the Act of 1899 (§ 2087 of the General Statutes) with
respect to the incidental, preliminary details attendant upon a high-
way improvement, and gives a somewhat more active part in
framing them to the State highway commissioner, it does not
affect, in substance, the town's relation to such an improvement,
which can still be inaugurated only by vote of the town, and the
details of which, when arranged by the highway commissioner,
are still subject to the approval of the town's official agents, whose
signatures are required to give validity to the contract. Accord-
ingly, the town within which a highway improvement is made
pursuant to the terms of § 1 of the Act of 1907, must still be re-
garded as the responsible public agent, and therefore as liable for
an actionable injury to property committed by the contractor
and required by the terms of his undertaking.
The case of *Griswold* v. *Guilford,* 75 Conn. 192, affirmed and followed.

Argued January 7th—decided March 11th, 1913.

ACTION in the nature of trespass for unlawfully enter-
ing the premises of the plaintiff's intestate and building

a highway thereon, brought to the Superior Court in Litchfield County where the plaintiff was nonsuited in a trial to the jury before *Greene, J.*, and from the refusal of the trial court to set aside such judgment the plaintiff appealed. *Error and new trial ordered.*

The following facts in evidence were undisputed: August 24th, 1907, the defendant town at a special meeting, duly warned, declared its intention to expend the sum of $5,000 in the construction or improvement of a section or sections of highway pursuant to the provisions of chapter 264 of the Public Acts of 1907 (p. 885), appropriated for that purpose said sum, or so much thereof as would represent the pro rata amount of its proportion of the State appropriation which should be allotted to it by the highway commissioner, and directed its selectmen to make application as provided in the Act. The selectmen thereupon applied in writing to the commissioner for an allotment of $20,000 for use in the construction or improvement of highways within the town under the vote and Act. The commissioner approved the application, and $7,872 was allotted by him for expenditure within the town. He first designated a section of highway, not in a trunk line, for improvement, and that improvement was completed and paid for. There then remained unexpended of the State allotment $900. The commissioner next selected for improvement another section of road which was a portion of a trunk line, and this section was improved by certain contractors acting under a contract which was signed by themselves on the one part and by the commissioner and the selectmen of the defendant on the other. The acts complained of were done by these contractors in the execution of this contract.

The plaintiff, in support of her allegation that these acts were those of the town, offered evidence tending to show that the improvement was one made under the

vote of the town and application of the selectmen referred to, and, therefore, pursuant to the provisions of § 1 of the Act. The defendant attempted to establish by its evidence that the highway in question was improved under the provisions of the latter portion of the second section, which give the commissioner power to act upon his own initiative. The testimony upon this issue, which for the most part related to the conduct and understanding of the parties, need not be recited.

It did not appear that the contractors acted outside of the requirements of the contract in doing what they did. Their acts complained of, and which evidence was offered to establish, were unlawful entrance upon the intestate's land, removal of soil, filling in with dirt and stone, demolition of walls and fences, wilful and wanton destruction of trees, and appropriation of the land thus entered upon to the defendant's use.

*Caleb A. Morse* and *Thomas J. Wall*, for the appellant (plaintiff).

*Thomas F. Ryan*, for the appellee (defendant).

PRENTICE, C. J. The acts complained of by the plaintiff were done in connection with, or in consequence of, a highway improvement undertaken and prosecuted under the provisions of chapter 264 of the Public Acts of 1907 (p. 885). They include acts of alleged trespass which were committed by contractors in the execution of a contract for such improvement, signed, as provided in the statute referred to, by the State highway commissioner and the selectmen of the defendant town, and which were claimed to have been within the requirements of that contract. In addition to these overt acts of the contractors, it is charged that the

defendant has appropriated the land of the plaintiff's intestate upon which the alleged trespasses were committed for public use as a highway. It was not shown that the town had done anything in the way of making such appropriation save as the improvement was made in the manner stated, and as public travel may have been invited over the strip of land so improved through the fact of such improvement. The nonsuit was not granted for any failure on the part of the plaintiff to offer sufficient evidence of the title of her intestate to the locus, or of the commission by somebody of the alleged acts of trespass thereon, or of a user of the land for public travel; nor could it properly have been granted for such cause or causes. The sole ground upon which the court based its action was that the town was not to be regarded as the responsible author of the improvement, and could not, therefore, be held liable for any invasion of the intestate's rights resulting from the acts and things complained of.

The statute contemplates two methods by which highway improvement under its authority may be inaugurated and carried out. One is prescribed in its first section, and involves preliminary action by the town. The other, provided for in the second section, calls for no such action. The initiative in this method of procedure is taken by the highway commissioner of the State, and the work is executed by him without reference to town request or sanction. The evidence in this case presented a preliminary question of fact, to be determined by the jury under proper instructions, as to whether the improvement in question was undertaken and prosecuted under the first or second of these methods. The trial court rightly held that under these conditions and the evidence a nonsuit could not be granted, unless the law was so that the town within which a highway is being improved pursuant to the

provisions of the first section of the Act is not to be regarded as the responsible author of the work.

The fundamental question before us, as before the trial court, thus becomes resolved into one of the construction of the Act of 1907 as bearing upon the question of town responsibility and liability, where a highway within it is being improved upon its initiative as provided in its first section.

In *Griswold* v. *Guilford*, 75 Conn. 192, 195, 52 Atl. 742, a former statute providing for highway improvement by State co-operation (Public Acts of 1899, p. 1091, Chap. 175) was before this court. The same claim as related to that statute was then urged upon our consideration which is now made in respect of the present statute. It was contended that highway work done under its provisions was to be regarded as State and not town work. We held otherwise. The present Act, in so far as its first section is concerned, is manifestly the result of modifications made of the former. Noticeable changes, however, are embodied in these modifications. It was the character of these changes which led the trial court to its conclusion that they marked a reversal of policy, and created a scheme for highway improvement which did not contemplate the town as the responsible author of it. Was this conclusion, which dictated the grant of the nonsuit, the correct one? This is the question which calls for our answer.

A comparison of the first section of the present Act with § 5 of the Act of 1899 discloses their striking similarity in general phraseology. Both describe the condition under which their respective provisions were to operate in identical language, as follows: "Whenever any town shall have declared its intention to build a public road or section thereof within such town, or to improve the same under the provisions of this act."

The present Act adds a requirement that an application to the highway commissioner be made by the selectmen. Then follows, in each case, a description of the manner of procedure. Here, and here alone, is found the changes made by the later legislation which can be regarded as pertinent to our inquiry. Under the earlier statute the selectmen of the several towns were permitted to figure somewhat prominently in the proceedings preparatory to the final act of decision and authorization of the work. Theirs was the tentative selection of the road or section of road. They were to cause the necessary survey to be made. They were given a voice in the choice of the kind of construction to be used. They were to advertise for the bids. The bonds accompanying the bids were to be such as satisfied them. They were authorized to participate in the rejection of bids. If an award was made, they had some not clearly defined authority in the matter of requiring a written contract.

The Act of 1907 provides a new method for the doing of these things. The same things are to be done, but a different agency is employed, and a simpler and less cumbersome procedure provided. As a result, selectmen are relegated to a position of less prominence than that which they formerly occupied, and the State highway commissioner steps more prominently into the foreground. But after all, an analysis of the two Acts shows that the change, as related to matters of substance, is more apparent than real.

Even under the prior Act the prominence of the selectmen and their actual authority was largely a thing of form. The commissioner stood beside or over them at every step of their action. They were powerless to accomplish results without his approval. Again, the things which they were then permitted to do, and now may not do, relate almost entirely to matters of mere

incidental preliminary detail. The nearest approach to a matter of substance is to be found in the selection of the highway or section which is to be improved. But this selection of his is only tentative. It is not final, and does not become final, until the selectmen shall have endorsed it by their execution of the contract. The present Act, by necessary inference from its provisions, requires the execution of a written contract in every instance, and the signature of the selectmen to that contract. Here is a reservation to the selectmen of the ultimate power of approval or disapproval of any and all of the preliminary action of the commissioner. They are under no obligation to adopt what he has done and authorize the execution of any work he has projected, planned, and prepared the way for. At this point they become masters of the situation, to the extent that they are privileged to decide whether or not the proposed work is of such a character as to command their approval and adoption, and to give effect to their decision by giving or withholding their signature to the contract. It is here that we come upon one of the significant facts of the situation, and we discover essentially the same condition which we found controlling in the former case, and there stated as follows: "The town is the ultimate authority. Unless it approve the specifications made the improvement cannot proceed. The specifications are thus in their preparation and proposal those of the highway commissioner. They become the town's by an adoption, without which there can be no work done." *Griswold* v. *Guilford,* 75 Conn. 192, 195, 52 Atl. 742.

Our study of the present Act thus discloses two features of controlling significance. In the first place, no improvement can be inaugurated under its first section except it be predicated upon a preliminary vote of the town and an application by the selectmen.

In the second, none can be carried out until the select-men shall have adopted what has been proposed by the commissioner. It is of little significance how or by whom plans and specifications may be prepared, bids advertised for, received, and passed upon, contracts drawn, and other preliminary details cared for. The significant facts, as indicative of the town's relation to work in execution or executed, are to be found in the facts that under the section in question the highway commissioner is powerless to improve a foot of highway, or to determine in what manner and upon what terms any improvement shall be made. His action must be set in motion by the town, and, before anything can then be done, be approved by its official agents. The town thus stands in the position of ultimate authority. It cannot proceed alone, but no one else can proceed without its concurrence. In respect to these essential features the authority of the town, as it was under the former Act, has not been shorn in the least by the later legislation, and the considerations which governed our conclusion in respect to the former Act remain unimpaired to dictate our conclusion that in the case of highway improvement executed pursuant to the first section of the statute now in force, the town within which it lies is to be regarded as the public agency to which the law has committed it, and, as such, its responsible author.

It is strongly confirmatory of the correctness of this conclusion that the opening sentence of the section reads as it does, and calls upon the town to declare "its intention to build . . . or to improve." The legislative conception of the proposed work as a town undertaking, and of its intent to so treat it, is here plainly indicated.

The policy of this State in the matter of highway construction and maintenance is an ancient and well

defined one. A change in that policy, or departure from it, is not to be lightly inferred from vague or uncertain legislative provisions.

There is error and a new trial is ordered.

In this opinion the other judges concurred, except HALL, C. J., who died after the cause was argued and before its decision.