# THE ORANGE HILLS COUNTRY CLUB, INC.
*vs.*
## TOWN OF ORANGE AND
## STATE HIGHWAY COMMISSIONER

Superior Court      New Haven County      File No. 58583

MEMORANDUM FILED SEPTEMBER 4, 1940.

*FitzGerald, Foote & FitzGerald,* of New Haven, for the Plaintiff.

*Harold E. Drew,* of Derby; *Francis A. Pallotti,* Attorney General, and *Harry L. Brooks,* Assistant Attorney General, for the Defendants.

QUINLAN, J. This is an action brought by The Orange Hills Country Club, Inc., against the Town of Orange and the State Highway Commissioner asking $20,000 damages.

Both defendants have interposed demurrers to the complaint. It seems desirable to dispose of the defendant Highway Commissioner's demurrer first, as the questions there discussed logically bring about the situation that the defendant town occupies. It is unfortunate that the interesting questions raised should have been delayed for presentation until after August 17, due to the lateness of one of the briefs, and not leaving the amount of time desired for the required work on the part of the court, made necessary because of the narrow approach of all of the parties in their briefs to the questions involved.

### I.

*Highway Commissioner's Demurrer.* The gist of this demurrer is directed to the claim that there is no authority to

sue the State or its agents. I am inclined to agree with counsel for the plaintiff that this question is more or less submerged in the more basic question of determining whether or not there is any statutory or constitutional provision authorizing a suit for damages against the State or its representatives to an abutting owner such as the plaintiff. The complaint has to do with a highway, alleged to be a state aid highway. The State Aid legislation, as it at present appears on our statute books, chapter 80 of the General Statutes, Revision of 1930, is the outgrowth of the Good Roads Act (Gen. Stat. [1902] §§2086-2088).

I find that on two previous occasions our Supreme Court has been urged to construe this legislation with respect to relief similar to that sought here so that the burden would be cast upon the Highway Commissioner. In the first case the then existing law was very closely analyzed in the case of *Griswold vs. Guilford,* 75 Conn. 192, and it was there held that the "Good Roads Act" (Gen. Stat. [1902] §§2086-2088) does not repeal, expressly or by implication, any part of the statute (Gen. Stat. [1902] §2051) making municipalities liable for special damage resulting from a change of grade; nor was such Act intended to make a radical change in the long-established policy of the State in respect to the care of highways. After some further changes had been made in the law under the provisions of chapter 264 of the Public Acts of 1907 (p. 885), in a case seeking dissimilar relief our court reviewed the action of the trial court based upon the ground "that the town was not to be regarded as the responsible author of the improvement, and could not, therefore, be held liable for any invasion of the intestate's rights resulting from the acts and things complained of." *Glover vs. Litchfield,* 86 Conn. 486, 489.

The Supreme Court not only cited the case of *Griswold vs. Guilford, supra,* but affirmed and followed it.

Unless the statutory changes made since that time have brought about such a complete change in the policy of the State as between towns and the Highway Commissioner as to require the old ruling of the case of *Griswold vs. Guilford, supra,* to be overruled, then that case and the case of *Glover vs. Litchfield, supra,* is the law of this case. Accordingly, within the reasonable limits of a memorandum such as this, I shall call attention to such changes but first reciting those

which recognize the town's part in such transactions and are in part reiterative of the original law, before reciting those which seem to enlarge the powers of ,the Highway Commissioner.

Section 1488 of part 2 of chapter 80, Revision of 1930, entitled "State Aid and Trunk Line", sets forth the kind of vote required to set in motion action by the Highway Commissioner, and reads in part: "Be it resolved that the town of .... *declares its intention to build or improve*" (italics added).

Section 1489 provides for the forwarding to the Highway Commissioner of a certificate, with a certified copy of the resolution provided for in section 1488, and that certificate provides, in part: "We, the undersigned board of selectmen of the town of ...., *in pursuance of the vote of said town....* make application for an allotment" (italics added).

Section 1496 provides the time within which a town shall pay its obligation. Section 1499 authorizes the Commissioner to take land "when requested in writing by the board of selectmen", and further in the same section: "All expense incurred by the highway commissioner under the provisions of this chapter, upon request of the selectmen of any town to take land for any new layout of any state aid highway, shall be paid by such town."

It is obvious that this refers to a new layout, nevertheless it has a certain significance.

Section 1500 provides the town in which such highway is to be constructed shall furnish the required right of way, and section 1501 authorizes the Highway Commissioner to enter into an agreement with the town "when any town shall have declared its intention to improve any road."

All the matter quoted from these sections discloses the action or the expression of intention by a town to do something. Now there are certain statutes which seem to extend the power of the Commissioner. For instance, section 1475 provides: "Said commissioner, except as provided in section 1635, shall exercise exclusive jurisdiction over all highways laid out, constructed, reconstructed or maintained by him, and shall have the same powers relating to the trunk line and state aid system of highways as are given to the selectmen of towns, the mayor and common council of any city and the warden and burgesses of any borough."

It must be admitted also that section 1494 gives the Commissioner the right to select the highway to be improved and to make all necessary surveys, plans and estimates and provide for the advertising and awarding of any contract in the same manner as if such state aid road were a trunk line road; this is essentially as it appeared in the 1907 law. Section 1506 provides for the submission of bids to the Highway Commissioner and also notification to the selectmen, and section 1510 provides that state aid and trunk line highways, except as otherwise provided by law, shall be maintained by the Highway Commissioner and the cost of maintenance, repairs and reconstruction paid from funds received from the Commissioner of Motor Vehicles.

From these various statutes it is claimed that a complete change of policy was declared by the Legislature. This claim, I think, is made without reference to the case of *Glover vs. Litchfield, supra,* interpreting the 1907 law, which in substance does not differ greatly from the present law.

It is not difficult to follow the decisions of our Supreme Court with reference to *injuries* sustained on such highways because without any doubt the State Aid law has thrown the maintenance, repairs and reconstruction of such highways on the Highway Commissioner. It is not a strange corollary to require that the one responsible for the condition of the road should be answerable for injuries sustained on it. Moreover, section 1481 specifically gives a right for suit for injuries sustained on said highways where it is the duty of the Highway Commissioner to keep them in repair. However, it is not so easy to pursue this extension beyond what appears to be a logical accompaniment of the responsibility to a claim for damages for injuries to a case where one claims to be specifically injured in connection with the grade. The only provision for damages and benefits is section 1528, having to do with *trunk line highways.* The reading of cases like *Falkowski vs. MacDonald,* 116 Conn. 241; *Perrotti vs. Bennett,* 94 id. 533, and *Horton vs. MacDonald,* 105 id. 356, are not helpful, while the case of *Moleske vs. MacDonald,* 109 id. 336, gives more cause for pause since there a distinction is made between the sidewalk part of a road and the vehicular part of a road, and so far as obligations concerning sidewalks on a state aid road are concerned they were thereby continued to be imposed upon the town, and section 1503 specifically excluded

the maintenance by the Commissioner of sidewalks on bridges.

Any right which the plaintiff may have to recover damages against the Highway Commissioner in this case must be based on our statutes and we have none imposing that liability on the Highway Commissioner so that even though there have been changes in the State Aid statutes they have tended in one direction and it is necessary to again return to the cases of *Griswold vs. Guilford, supra,* and *Glover vs. Litchfield, supra,* where it was directly held that the Good Roads Act (now the State Aid Act) did not repeal, expressly or by implication, any part of the statute, at the present time section 1438 (and at the time of the *Griswold vs. Guilford* decision, Gen. Stat. [1902] §2051), making municipalities liable for special damage resulting from a change of grade. That statute need not be discussed under this section because it specifically refers to a town.

To clearly analyze and interpret the present claims would require inserting in this memorandum the entire decision by Chief Justice Prentice in *Glover vs. Litchfield, supra,* and that case bears careful reading. It will suffice to cull a few brief extracts from that case.

"The Act of 1907 provides a new method for the doing of these things. The same things are to be done, but a different agency is employed, and a simpler and less cumbersome procedure provided. As a result, selectmen are relegated to a position of less prominence than that which they formerly occupied, and the State highway commissioner steps more prominently into the foreground. But after all, an analysis of the two Acts shows that the change, as related to matters of substance, is more apparent than real." (p. 491.)

"Our study of the present Act thus discloses two features of controlling significance. In the first place, no improvement can be inaugurated under its first section except it be predicated upon a preliminary vote of the town and an application by the selectmen." (p. 492.)

"The significant facts, as indicative of the town's relation to work in execution or executed, are to be found in the facts that under the section in question the highway commissioner is powerless to improve a foot of highway, or to determine in what manner and upon what terms any improvements shall

be made. His action must be set in motion by the town, and, before anything can then be done, be approved by its official agents." (p. 493.)

"It is strongly confirmatory of the correctness of this conclusion that the opening sentence of the section reads as it does, and calls upon the town to declare 'its intention to build ....or to improve.' The legislative conception of the proposed work as a town undertaking, and of its intent to so treat it, is here plainly indicated." (p. 493.)

"The policy of this State in the matter of highway construction and maintenance is an ancient and well defined one. A change in that policy, or departure from it, is not to be lightly inferred from vague or uncertain legislative provisions." (p. 493.)

If the changes made are more vital than I have interpreted them to be, the fact that the claim now made has been twice before our Supreme Court, and interpreted in contrary fashion to that of the town in this case, impels me to leave any such far-reaching plan or act as to overrule the case of our highest tribunal, and thereby change the policy of the State, to that tribunal. And consequently the demurrer of the Highway Commissioner is sustained as to paragraphs 1, 2, 3 and 8 of the demurrer. So far as the other grounds are concerned I do not apprehend that the gist of the complaint is based on the allegations attacked by such other grounds but that they are merely incidental recitations as to what it is claimed was done, and that this action is rather one of *ex lege* because of a failure to fix damages or benefits. *Sisson vs. Stonington,* 73 Conn. 348.

II.

If *Griswold vs. Guilford, supra,* and *Glover vs. Litchfield, supra,* are still good law, and I so hold for the reasons set forth in subdivision I, any action that the plaintiff may have is against the Town of Orange, and, under the allegations of the complaint, which can only be determined by evidence, it is impossible to say whether the plaintiff can bring itself within the provisions of section 1438.

The demurrer of the Town of Orange is overruled on both grounds.